Ruffin, O. J.
 

 From the manner in which the objection is expressed, “that the magistrate had no right to administer the book debt oath,” it might be supposed it was contended, that the act respecting the proving of book debts did net apply to trials out of court. But it seems impossible that such a notion could be entertained, since it is perfectly certain, that ever since justices of the peace exercised any such jurisdiction, the most common subjects of it have been ac
 
 *79
 
 counts proved by the party’s oath and book. In
 
 Molier’s
 
 case, 1 Dev. 263, it was said, the jurisdiction of the magistrate was not to be doubted, and in that case there was a conviction for perjury upon precisely such a proceeding as that in this case.
 

 But we are told, that the point, intended to be raised, was, whether the plaintiff could, within the meaning of the book debt law, prove or be examined to the price charged in the account, as having been agreed on by the parties. Not to speak of the singularity of such an objection being taken on the evidence offered by the defendant himself, on his plea of justification, we are satisfied that it is altogether untenable. In the first place, admitting that it was not competent to examine the plaintiff to that point, yet, as he was examined, if he swore falsely and corruptly, he committed perjury. The subject was within the jurisdiction of the magistrate, and the matter deposed to was material to that in dispute, namely, the sum which the defendant owed. In such a case the legal incompetency of one, admitted and sworn as a witness, does not screen him from the guilt or penalties of perjury. That is unquestionably law, and was so laid down in the case just cited. In the next place, the court is of opinion, that the party is competent to prove the price as well as the delivery of the articles. The act is not restricted to counts on a
 
 quantum valebat,
 
 but embraces every case of
 
 indebitatus assumpsit.
 
 Apprehending that we might be drawn into a mistake on this point by the punctuation in the later editions of .the Statutes, we have had recourse to the earlier publications of the laws, and they render the point still more clear. Swann’s edition of 1752, gives the act as it first passed in 1739, C. 3, in these words : “ That whenever any person shall bring any action of debt, or upon the case, and therein shall declare upon an
 
 indebitatus assump-
 
 sit.i or
 
 quantum
 
 valebat, or
 
 quantum
 
 meruit, for goods,” &c. This seems clearly to shew, that in every case of as-sumpsit, for a demand, within the limited sum, the party’s oath and book are evidence, provided only that the buyer and seller are alone privy to the contract. But those are not
 
 *80
 
 the strongest reasons for this interpretation. It is to be de-from other parts of the act, and necessarily results fr0m the nature of the subject. When the act speaks of “books of accounts,” it must mean books, as it was known they were universally kept; which is, by entering therein not only the articles sold or received in payment, but also the prices. Without the prices, the accouiit is not true. Such is the variety in quality and price of articles of .the same kind, that no just information of the state of the accounts can be gathered from books, in which only the articles are entered, without a price affixed. No third person can prove the value, unless he was also privy to' the delivery, so as to know what the kind and qualify of the thing were. Now the act makes not only the oath evidence, but also the book thus kept and thus known to be kept. The whole goes to the jury as evidence. Then, there is the provision, that the oath and book shall not be evidence to an amount exceeding sixty dollars; which can be enforced only by annexing the values to the articles. Furthermore, the party is to swear, that the book contains a true account of all the dealings, or the last settlement of accounts, and that he hath given the defendant all just credits.
 
 A
 
 settlement, in which the sums are not computed and the balance in money struck, is an absurd idea, not contemplated by the Legislature. As we conceive, the meaning of the act is, that, after the party has been sworn and made out by his oath, that his book has the requisite to make it evidence, the book proves the matters therein stated, as they are stated; subject, nevertheless, to being contested by the defendant, as provided in the fourth section, and as he could do, if the account had been proved by any other witness. It was held in
 
 Kitchen v Tyson,
 
 3 Mur. 314, that the party is made a witness in his own cause, and may be treated as other witnesses, and discredited. It follows, that he may be cross-examined, as to all parts of the account to which his oath applies, with the view to discredit or contradict him, either in respect to the articles, or prices charged, orto the credits entered or omitted. In this case, after the plaintiff had taken the usual oath, that this was a
 
 *81
 
 true account, and thereby had his book laid before the istrate, it was at the instance, and for the benefit of the de-fendaut himself, that the plaintiff was subjected to the special examination respecting the agreement touching the price of the corn, in order to shew that the account was not true.— That was an enquiry material to the controversy, and if ,he had sworn falsely and eorruptly upon it, the plaintiff Would have been guilty of perjury, as was expressly decided in
 
 The State
 
 v
 
 Molier.
 
 Judgment affirmed.
 

 Per Curiam. Judgment affirmed.